Our final case for oral argument this morning is Appeal No. 24-2504, Caraba v. Paul Revere Life Insurance Company. Good morning, Mr. Dabofsky. Good morning, Your Honor, and may it please the Court. My name is Mark Dabofsky. I represent Dr. Brian Caraba in this matter. The issue before this Court is whether Paul Revere Life Insurance Company can be allowed to escape its contractual obligations by applying a self-serving interpretation of the undefined term other gainful occupation in Dr. Caraba's policy. The term other gainful occupation is susceptible to multiple meanings. This is demonstrated by the cases that we cited. It's demonstrated by Paul Revere's own customer claim manual, which uses a specific definition with respect to long-term disability insurance, but there is no definition in this policy. Now, the customer care manual does have a separate section for individual disability insurance policies that lack a definition of the term other gainful occupation. The section in the customer care manual says that a number of factors will be employed, but one that was clearly omitted in this case, and which was a fatal error by the insurance company, is that the claimants' education, work experience, and prior earnings had to be taken into consideration. Now, we don't argue that there has to be a specific percentage threshold or a particular dollar amount. The ambiguity is still present, and where there is an ambiguity, there is a long-standing legal doctrine known as contra-proferendum that has been in existence since the 1600s. It was incorporated in United States jurisdiction by the Supreme Court in 1923. This court has decided numerous cases where it has applied the doctrine of contra-proferendum, and where that doctrine applies, an ambiguity must be construed against the insurance company and must be construed in a manner most favorable to the insured. If we agree with the district court that the policy does not require consideration of your client's pre-disability salary, are there any disputed issues of fact left? There wouldn't be, but that determination was error. I understand your argument. I just want to make sure I understand the full scope of it. So if we would agree with the district court on that issue, that you did not have to, the insurance company did not have to consider his pre-disability salary, you would agree that your client cannot prevail then? That would be somewhat obvious, but as we've maintained, there was clear error in that determination. The court based that determination on its citation of the Gazi v. Biserv case, which is an entirely different kind of insurance policy as the one that Dr. Carraba purchased. Gazi v. Biserv, using the distinction in the Hammond case from this court, would be classified as a general disability policy, while Dr. Carraba's policy would be classified as an occupational policy. And that determination does not square with Paul Revere's own internal documentation, that the age, education, experience, and prior salary has to be a factor that's taken into consideration. Mr. Dubosky, can you educate me on what role the outline of coverage has when the insured and the insurer are kind of communicating what the terms of a policy would be? Absolutely not. The outline says explicitly that it is not the policy, and the terms of the policy... No, no, I understand it's not the policy. I'm wondering, is that a document that is exchanged between the insurer and the insured as part of the negotiations, discussions, before the policy is finalized and executed? I believe it was. But there, too, the outline of coverage says meaningful occupation. And you can't disambiguate an ambiguous term with another ambiguous term. I'm sorry, meaningful salary or meaningful earnings. With regard to the doctrine of contra preferendum, I wonder what your view is on when that doctrine is triggered. Is it triggered initially if we look at the four corners of a policy and think that a term is ambiguous? Or is it triggered later on when, after we do a more fulsome inquiry to look at any sort of relevant extrinsic evidence and see if we can come to some sort of construction with regard to the term? I think it would be both, Your Honor, because... Well, I think it can't be both because... Let me explain, if I can. So, in the first instance, looking at the policy itself, other reasonable gainful occupations, what does that mean? And the industry standard suggests that it means 60% of your prior earnings. Case law, going back to the 1920s ERECA decision from California, says that station in life has to be considered. Case after case has cited other policies that define the meaning of that term to be the equivalent of 60% of your prior salary if you're not working, 80% if you are working. So, for the insurance company in this case, to take the position that it is the median salary for all wage earners in the state of Illinois is something that's just totally made up. Now, we cited two cases... Well, I'm not really sure that... Kind of taking it back to my question, I'm not sure that really addresses my question, which is... You know, I'm trying to decide whether it's the doctrine of contract preferendum is a doctrine of last resort, that is, after we exhaust every kind of tool that we have in constructing or interpreting a term of a contract, or whether it's a doctrine that kicks in if we can't figure out what a term is, if we determine a term is ambiguous based upon the intrinsic evidence, the four corners of the contract. I think it would be the latter, Your Honor. Okay. And I was going to say that we cited two cases for the bad faith argument that apply here as well. The first case was from the Ninth Circuit, the Amadeo v. Principal Life case. And the court said something very important there. The court said that an insurer cannot escape bad faith liability by adopting an interpretation of its policy grounded only in the subjective perceptions of its unguided claim adjusters. We maintain that that's exactly what Paul Revere did in this matter. And the other case that we cited was Wolf v. Prudential Insurance from the Tenth Circuit. And in that case, and I quote, insurers are obviously well aware of this familiar rule referring to the doctrine of contract preferendum, but Prudential's argument would allow them to ignore it with impunity. Under Prudential's argument, an insurer could intentionally insert an ambiguous term into a policy and continually deny coverage based on that term, despite contrary court decisions or its own doubts about the meaning of that term. The risk of drafting improperly should be falling on Paul Revere in this case and not on Dr. Carraba. That's the whole point of the contract preferendum rule. That it shifts the risk to the party who drafted the contract and could have prevented the loss. Had Paul Revere incorporated a definition of other reasonable gainful occupation consistent with its later interpretation, I wouldn't be standing here today. They didn't do that, and for that reason this court must reverse the district court. Thank you, Mr. Dabowski. Ms. Herring? Good morning. Good morning. May it please the court, Jacqueline Herring on behalf of the Paul Revere Life Insurance Company. Under this particular policy, no disability benefits are payable when Dr. Carraba continues to work in any gainful occupation. What guidance do insured parties receive when they sign up for these parties? About these policies, about how Paul Revere is going to calculate gainful occupation? Well, I think as Judge Lee pointed out and as the district court pointed out, there's the number one in the application. He can choose different coverages. This is the coverage he chose. He did not choose coverage that was own occupation coverage. I asked what guidance do parties receive when they sign up for these policies about how Paul Revere is going to define or calculate other gainful occupation? I don't know the answer to that question, Your Honor, other than what's in the outline of coverage. And the thing is, there's all this discussion of ambiguity, but there is no ambiguity unless there are two competing definitions. Plaintiff has never offered a competing definition. The parties agree essentially on the definition that gainful needs to be some sort of substantial income. And that flexibility isn't an ambiguity. It's a flexibility that this court has recognized, the O'Reilly case that we cited that said, if you impose a specific percentage, that just doesn't make sense and leads to absurd results in some cases. Same sort of issue in the McFarland case when the debate was, well, how many duties do you have to be unable to perform before you're unable to perform your occupation? And it's not a set amount because we need to have flexibility. Sometimes one, sometimes more. So somebody making a million dollars, 60% of their income, if they're just under that at the 599, you ask anybody, the reasonable and ordinary definition of that term, $599,000, is absolutely going to be a gainful occupation. But under the 60%, which is the only thing that plaintiff has ever suggested is that it must be a 60% guideline, that's adding something to the contract that isn't there. The contract does allow flexibility. This court has endorsed the concept of those flexible terms leading back to the McFarland decision, as well as discussed in O'Reilly. So what's gainful employment would vary depending upon the underlying occupation. Is that fair? What is a gainful occupation would vary if you're a dentist versus a cashier versus a stockbroker. I think that all of those factors would play into, and that's again why there needs to be a flexible standard. And in individual coverage, there's also this sort of, well, this is what we do in group coverage, so we must do that in individual coverage. And those are two entirely different situations. Somebody in group coverage is paying a premium to get 60% of their income insured. Dr. Carraba didn't pay to have a specific percentage of his income insured. He paid to insure $37,000 a year. That's it. So to suggest that $70,000 isn't gainful when he only insured $37,000 also doesn't make sense. Is there anything to what I take to be Dr. Carraba's concern that having it undefined could lead Paul Revere to consistently say, well, okay, the minimum Social Security earnings qualify as gainful. You know, gainful earnings qualify as gainful occupation. So that's that, and would that be misleading to someone who purchases what's titled here a business executive policy? Anything to that? I don't think that that would occur. But again, the issue is, is this contract ambiguous? And a term not being defined doesn't make a contract ambiguous. Well, I guess, you know, to Judge Jackson and Tim's point, if I'm the insured, how would I know? Like when I'm trying to order my life and I have this policy, and, you know, I presumably can work in certain occupations, certain jobs, and let's say I have a choice of jobs. But I want to make sure that I'm not doing anything that would somehow invalidate this insurance policy. How would I go, practically speaking, how would I go making that determination? Well, I think you could ask the question, number one, and that's where things like the outline of coverage would come in. We have situations that I've seen where someone says... So I could actually call Paul Revere and say, hey, you know, I'm thinking about doing this. Will that disqualify me from the coverage? Yes, or the agent you worked with to get the coverage, depending upon at what stage you are. And we see that regularly, particularly with someone who wants to know, how are you defining my own occupation? I'm in a very unique specialty, I'm a heart surgeon. Would you consider that my own occupation? And we see specialty letters that are issued that respond to that and help with explaining how that is. But, again, this isn't really about what the insurer did or didn't do. This is a breach of contract action that's in court. And the issue is, was the contract breached by not paying him benefits under the terms of this policy? And it wasn't. The plain and ordinary definition that we see in the dictionaries that we saw in other case law is any occupation from which the insured can earn a reasonably substantial income rising to the dignity of an income or livelihood. He was earning $70,000. That's 20% more than the average Illinois citizen. Is it kind of, you know it when you see it? I don't know it so much that you know it when you see it as there's a balance of factors. And, again, that type of flexibility is allowed in disability coverage. It doesn't make a term ambiguous. And the McFarland decision was clear on that. Other courts that have considered this same language have found it not ambiguous. So there is no court that has said this language is ambiguous. And, again, an ambiguity requires competing reasonable interpretations. Plaintiff has not offered any competing reasonable interpretation other than to say we need to append onto the policy a 60% requirement. That's not a reasonable interpretation of gainful. That's a here's the only factor I want you to consider in deciding whether it is gainful. Does the insurance company consider the amount of the benefit in trying to determine what is gainful employment in a particular case? So let's say here if he had insured $100,000 worth of benefits as opposed to $37,000. Is that something that Paul Revere would take into consideration in determining whether or not $60,000 is gainful? And, unfortunately, I think the answer I need to give is it depends. Because, again, it's a flexible analysis. Just like in McFarland, maybe one duty makes you disabled. Whereas for somebody else, being unable to do 65% of his duties, he's not disabled. So it really does become disability as a fact-based decision. The same way you can't say because somebody has a lumbar degenerative disc disease they're disabled. Well, it depends. What's the impact of that? You started out by mentioning that he had different choices and policies that he could purchase. Yes. And you seemed to say that one of the choices he had was he could have actually purchased a policy that insured him 60% of what he was making at that time. Is that correct? Did I hear you correctly? Yes. That's the AB form that's in that outline of coverage where you can choose what percentage you want. It's not so much that you're insuring a particular percent. It's that any occupation becomes defined by the percent that you choose. Yes. Because the percentage of income, there's underwriting factors that are a little more dense than I can talk about right now that would determine the actual percentage of your income that you could insure. But that would allow for a specific percentage to be guaranteed to you. And again, that becomes more the situation of the functional analysis. All of the group coverage cases that are cited in plaintiff's brief are dealing with an entirely different issue. These are people who are not working. And the question is, what functional floor are we going to set for them? What occupations are we going to look at that are appropriate for those people so that we can determine a functional analysis of whether they're able to work? In this case, he is working. And the only question is whether that $70,000 he is earning that exceeds every marker, including what he earned from his own dental practice, whether that is a gainful occupation. Facts are undisputed, and the district court should be affirmed. Thank you, Ms. Herring. Mr. Hrabowski, you have about a minute left. I think counsel overstates her argument and also relies on hypotheticals that are not present here. This is the policy that Dr. Carraba purchased. This is the policy that did not have the definition of gainful occupation. This is the policy that Paul Revere itself says in their benefit claim manual that they must take into consideration education, training, experience, and income. By using the median income for all wage earners, they failed to do that. And this policy is ambiguous. The doctrine of contraprofarentum applies, and this court should reverse the lower court. Thank you. Thank you, Mr. Hrabowski. Thanks to both counsel. The court will take the case under advisement, and that concludes our oral arguments for today.